IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ALLEN POLK**                                                                                          **PETITIONER**

v.                                    NO. 4:24-cv-00135-KGB-PSH

**DEXTER PAYNE**                                                                                       **RESPONDENT**

RECOMMENDATION

INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2254, petitioner Allen Polk ("Polk") challenges the denial of his release on parole. It is recommended that this case be dismissed. He never acquired a property interest in his release, and he has failed to show that Arkansas officials violated his constitutional rights by conditioning his release on his completion of substance use rehabilitation services.

The record in this case reflects that on August 22, 2022, Polk pleaded guilty in a consolidated case in an Arkansas state trial court. He was sentenced to three, concurrent thirty month terms of imprisonment.

On December 2, 2022, Polk entered the custody of the Arkansas Division of Correction ("ADC"). He represents, and the undersigned accepts, that upon his arrival there, "the ADC Records Staff ... calculated [his] time based on [his] concurrent sentencing orders and determined that [his] transfer eligibility date ... had already elapsed on November 7, 2022." See Docket Entry 2 at CM/ECF 6.[1]

---

[1] A prisoner's transfer eligibility date is the "earliest date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the [Arkansas Division] of Community Correction, which may include parole." See Robinson v. Kelley, No. 5:16-cv-00167-SWW-JTR, 2017 WL 3404973, 1 (E.D. Ark. July 6, 2017), report and recommendation adopted, No. 5:16-cv-00167-SWW, 2017 WL 3401274 (E.D. Ark. Aug. 8, 2017).

The ADC has an inmate handbook that provides basic information about ADC policies and procedures. In a paragraph captioned "Substance Abuse Treatment Programs," the handbook provides the following:

> It is the policy of the ADC to assess the propensity for alcohol and drug use of all inmates entering the ADC and to make available, to the maximum extent possible, effective treatment. Inmates will be assessed for alcohol and drug use problems during the intake process of their incarceration. The mental health intake assessment will include an interview reviewing substance use related crimes, social histories revealing substance use, and previous treatments, which may indicate propensities for substance use. Following this, intake recommendations for substance use treatment will be made if indicated, and inmates will be informed of any substance use treatment referrals. Substance use treatment is a voluntary service, and inmates who are stipulated by the Board of Parole to participate in drug treatment can refuse the services of this program by signing a Substance Use Rehabilitation Services (SURS) Refusal Form. Inmates refusing substance use treatment shall be informed that such refusal may affect their date of release. Inmate who have refused substance use treatment may, at a later date, request these services in writing.

See Docket Entry 7, Exhibit D at CM/ECF 32. In a paragraph captioned "Parole/Transfer," the handbook provides, in part, the following: "… Since parole is a privilege and not a right, it may carry several conditions. An inmate can be required by the Parole Board to complete certain ADC programming such as Substance Abuse Treatment … before being released on parole. …" See Docket Entry 7, Exhibit D at CM/ECF 50.

On December 5, 2022, an ADC official recommended that Polk participate in "substance abuse treatment." See Docket Entry 2 at CM/ECF 56. Polk refused to acknowledge the recommendation, and he did not participate in the recommended treatment.

On January 26, 2023, Polk was given notice of a hearing before the Arkansas Parole Board ("Board") to consider his release on parole.[2] The notice provided, in part, the following:

> If you were referred for RSVP [writer's note: Reduction of Sexual Victimization Program] or another treatment program, your application for treatment programs, program referral sheet, and all screenings will be reviewed by the Parole Board along with other documents. If you have not submitted your application and/or completed those programs, your release may be denied or deferred on that basis.

See Docket Entry 2 at CM/ECF 57.

On March 21, 2023, the Board approved Polk's release on parole but did so with the stipulation that he first complete "SURS," or substance use rehabilitation services. See Docket Entry 2 at CM/ECF 58. He challenged the stipulation, but his requests for reconsideration were denied.

---

[2] The issue before the Board actually involved Polk's transfer from ADC custody to the supervision of the Arkansas Division of Community Correction, which, as Robinson v. Kelley noted, "may include parole." See Footnote 1. In order to maintain consistency with several of Polk's representations, the undersigned will frame the issue before the Board as simply whether he should be released on parole.

Polk began the case at bar by filing a petition in which he challenged the denial of his release on parole.[3] Although a brief summary of his petition is a bit difficult, it appears that his claim centered on his assertion he acquired a right to release on parole, and the Board should be compelled to release him.

Respondent Dexter Payne ("Payne") filed a response to the petition. In the response, Payne maintained that the petition should be dismissed because Polk has no right to release on parole. Payne additionally maintained the following:

> The Arkansas parole statutes provide broad discretion to the Parole Board, the Board of Corrections, the ADC, and the ACC [writer's note: Arkansas Division of Community Correction]. For example, the statutes provide that the Board "may" grant parole when, in its opinion, "there is a reasonable probability that the prisoner can be released without detriment to the community or himself or herself" and "is able and willing to fulfill the obligations of a law-abiding citizen." ... The statutes also clearly provide for discretion on the part of the Board in determining if or when, and under what conditions, a particular inmate will be transferred from the ADC to parole status under ACC supervision, and if or when the inmate will be returned to the ADC. ... The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred under these provisions as a matter of right." ...

---

[3]   Polk advanced several other claims, e.g., the Board violated state law when the Board approved his release subject to his completion of substance use rehabilitation services, and a Board member benefitted financially from the decision. Polk's other claims are outside the scope of a case filed pursuant to 28 U.S.C. 2254.

> Additionally, while Mr. Polk questions the motivations of the Parole Board, "[t]here is no federal constitutional interest in having state officials follow state law or prison officials follow prison regulations." ... "[R]egardless of whether any state laws or Arkansas Parole Board policies have been violated, [a federal court sitting in habeas review] is limited in determining whether a federal constitutional violation has occurred." ... "The Due Process Clause of the Fourteenth Amendment, not state law, governs the procedures which the state must follow in depriving [petitioner] of a substantive liberty interest." ... Because there is no constitutional error in requiring an inmate to complete programs he was informed of before he [is] granted a transfer—especially when he is specifically informed that his refusal may affect his release date and he is given the opportunity to change his mind and complete the required program upon request.

See Docket Entry 7 at CM/ECF 5-7.

Polk thereafter filed a reply to Payne's response. In the reply, Polk clarified his claim in this case. He noted that his claim is not about his right to parole but about exercising what he characterizes as a property interest in his release on parole. He maintains that he acquired a property interest in his release on March 21, 2023, the date the Board approved his release. It is his contention that the Board cannot make his release conditional on his completion of substance use rehabilitation services, services he represents and the undersigned accepts, are voluntary. Specifically, he alleged the following:

> I assert that as of March 21, 2023, I have possessed a property interest in the state conferred benefit of timely "Transfer to A.C.C. Supervision," ... in spite of the fact that the [Board] simultaneously mandated an arbitrary and illegal "Pre-Release Condition" on the face of the same document that has deprived me of the privilege of release on parole they have already given me; i.e., I have a vested interest in that state conferred benefit they already handed me. It's mine. They took it under color of state law.

See Docket Entry 9 at CM/ECF 3 (emphasis omitted).

Polk's claim raises several questions, not all of which were addressed by Payne. Notwithstanding those unaddressed questions, Polk concedes that as a general proposition, he has no right to parole. His claim is that he nevertheless acquired a property interest in his release on parole on March 21, 2023, the date the Board approved his release subject to his completion of substance use rehabilitation services.[4] For the reasons that follow, though, he never acquired a property interest in his release, and he has failed to show that the Board violated his constitutional rights by conditioning his release on his completion of substance use rehabilitation services.

---

[4] Polk does not maintain that he has a liberty interest in his release on parole. He does not so maintain for good reason; a prisoner has no such interest. See Croston v. Payne, No. 4:22-cv-00616-LPR-JJV, 2022 WL 18106996 (E.D. Ark. Aug. 23, 2022), report and recommendation adopted, No. 4:22-cv-00616-LPR, 2023 WL 23806 (E.D. Ark. Jan. 3, 2023).

"To have a constitutionally cognizable property interest in a right or a benefit, a person must have a 'legitimate claim of entitlement to it.'" See Austell v. Sprenger, 690 F.3d 929, 935 (8th Cir. 2012) (quoting Board of Regents of State College v. Roth, 408 U.S. 564, 577 (1972)). The interest arises when "state law creates expectations that are justifiable." See Austell v. Sprenger, 690 F.3d at 935 (internal quotation marks omitted).

The relevant Arkansas statutes are clear; Polk's release on parole is within the discretion of the Board, and his release may be subject to certain conditions.[5] Moreover, the ADC inmate handbook clearly provides that an inmate's release may carry several conditions. He can be required to complete ADC programming, including substance abuse treatment, and his refusal to complete the treatment may affect the date of his release. Polk was also informed in the January 26, 2023, notice he received from the Board that if he failed to complete a recommended treatment program, his release might be denied or deferred on that basis. Given the foregoing, he never had a legitimate claim of entitlement to his release and has no property interest in his release.

---

[5] See, e.g., Ark. Code Ann. 12-27-127(b)(2), (3); Ark. Code Ann. 16-93-701(a)(1), (b)(3); Ark. Code Ann. 16-93-615(d)-(g), (i); Ark. Code Ann. 16-93-617; Ark. Code Ann. 16-93-1208(a). See also Kennedy v. Payne, No. 4:23-cv-00596-LPR-PSH, 2023 WL 9188130 (E.D. Ark. Sept. 6, 2023), report and recommendation adopted, No. 4:23-cv-00596-LPR, 2024 WL 112931 (E.D. Ark. Jan. 10, 2024).

Polk maintains that the Board violated his constitutional rights by conditioning his release on his completion of substance use rehabilitation services. He has failed, though, to support his assertion with any authority, and the undersigned knows of none. As noted above, the Board has the discretion to grant parole, and the Board can condition his release on his completion of a treatment program, even a voluntary one.

In a key respect, this case is not unlike Ware v. Kelley, No. 1:18-cv-00069-DPM-PSH, 2019 WL 1999788 (E.D. Ark. April 9, 2019), report and recommendation adopted, No. 1:18-cv-00069-DPM, 2019 WL 2000573 (E.D. Ark. May 6, 2019). There, the Board approved Ware's release on parole but did so on the condition that he submit an acceptable parole plan. When he failed to submit an acceptable plan, his release was denied. He then filed a habeas petition challenging the denial. United States District Judge D.P. Marshall Jr. denied the petition, observing that Ware "[held] the keys to his release on parole and has repeatedly failed to use them" because he failed to submit an acceptable plan. See Id., 2019 WL 1999788, 4.

The same observation is true in the case at bar. Polk appears to hold the keys to his release on parole, but he has failed to use them. Were he to complete substance abuse treatment, save some unforeseen circumstance, the undersigned would expect that he would be released.

9

Given the foregoing, it is recommended that Polk's petition be dismissed, all requested relief be denied, and judgment be entered for Payne. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. Myers cannot make a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. 2253(c)(2).

DATED this 4th day of June, 2024.

_____
UNITED STATES MAGISTRATE JUDGE